LAWYERS FOR CLEAN WATER, INC.
Layne Friedrich (Bar No. 195431)                    JS6
Email:  Layne@lawyersforcleanwater.com
Drevet Hunt (Bar No. 240487)
Email:  Drev@lawyersforcleanwater.com
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155

VENTURA COASTKEEPER
Jason Weiner (Bar No. 259264)
Email: jweiner.venturacoastkeeper@wishtoyo.org
3875-A Telegraph Rd. #423
Ventura, California 93003
Telephone: (805) 658-1120
Facsimile: (805) 258- 5135

Attorneys for Plaintiffs
VENTURA COASTKEEPER,
a program of the WISHTOYO FOUNDATION, and
WISHTOYO FOUNDATION

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VENTURA COASTKEEPER, a program of the Wishtoyo Foundation, and WISHTOYO FOUNDATION, a non-profit corporation | Case No. 2:11-cv-05293 CBM (FFMx) |
| Plaintiffs, | **[Proposed] CONSENT DECREE** |
| v. | **(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq*.)** |
| VENTURA COUNTY AUTO PARTS, INC., a California corporation | |
| Defendant. | |

**WHEREAS,** the Wishtoyo Foundation is a 501(c)(3) non-profit public benefit grassroots corporation organized under the laws of the State of California. The Wishtoyo Foundation's mission is to preserve, protect and restore Chumash culture, the culture and history of coastal communities, cultural resources, and the environment;

**WHEREAS,** Ventura Coastkeeper is a program of the Wishtoyo Foundation. Ventura Coastkeeper's mission is to protect, preserve, and restore the ecological integrity and water quality of Ventura County's inland water bodies, coastal waters and watersheds;

**WHEREAS,** Ventura Coastkeeper and Wishtoyo Foundation are referred to herein as "Coastkeeper" or "Plaintiffs";

**WHEREAS,** the Ventura County Auto Parts facility is located at 788, 842, 910, 936 and 1021 Mission Rock Road, Santa Paula, California ("VCAP Facility" or "Facility").

**WHEREAS,** the VCAP Facility is owned and/or operated by Ventura County Auto Parts, Inc. (hereinafter "Defendant");

**WHEREAS**, on 20 April 2011, Coastkeeper issued a sixty (60) day notice letter ("Notice Letter") to Defendant, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board") and the Regional Water Quality Control Board ("Regional Board"), stating its intent to file suit for violations of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"). The Notice Letter alleged violations of the Clean Water Act for Defendant's discharges of pollutants into receiving waters in violation of National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Storm Water Permit");

**WHEREAS**, on June 24, 2011, Coastkeeper filed a complaint against Defendant in the United States District Court, Central District of California (Case No. 2:11-cv-05293 CBM (FFMx)) entitled *Ventura Coastkeeper, et al. v. Ventura County Auto Parts, Inc.* ("Complaint");

**WHEREAS**, on September 8, 2011, Coastkeeper filed an amended complaint against Defendant ("Amended Complaint");

**WHEREAS**, the Defendant denies all allegations of the Complaint and Amended Complaint;

**WHEREAS**, Plaintiffs and Defendant (collectively referred to herein as the "Settling Parties" or "Parties") agree that it is in the Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint and Amended Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

2.     Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. §1365(c)(1), because the Facility at which the alleged violations took place is located within this District;

3.     The Amended Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4.     Plaintiffs have standing to bring this action;

5.     The Court shall retain jurisdiction over this matter for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

**I.     OBJECTIVES**

6.     It is the express purpose of the Parties entering into this Consent Decree to

further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*, and to resolve those issues alleged by Coastkeeper in its Amended Complaint.  In light of these objectives and as set forth fully below, Defendant agrees, *inter alia*, to comply with the provisions of this Consent Decree and to comply with the requirements of the Storm Water Permit and all applicable provisions of the CWA.  Specifically, the Storm Water Permit requires that Best Management Practices ("BMPs") be developed and implemented to achieve Best Available Technology ("BAT") and the Best Conventional Pollutant Control Technology ("BCT"), and to achieve compliance with applicable water quality standards.

## II.   EFFECTIVE DATE AND TERMINATION DATE

7.   The term "Effective Date," as used in this Consent Decree, shall mean the last day for the United States Department of Justice and the United States Environmental Protection Agency (collectively "Federal Agencies") to comment on the Consent Decree, i.e., the 45th day following the Federal Agencies' receipt of the Consent Decree, or the date on which the Federal Agencies provide notice that they require no further review and the Court enters the final Consent Decree, whichever occurs earlier.

8.   This Consent Decree will terminate on its own terms five (5) years from the Effective Date, unless there is an ongoing, unresolved dispute regarding Defendant's compliance with this Consent Decree. However, if no numeric limit, as outlined in Table 1, is exceeded for two consecutive Wet Seasons, beginning with the 2014-2015 Wet Season, Defendant may move the Court to terminate the Consent Decree.

## III.  COMMITMENTS OF THE PARTIES

### A.   Initial Industrial Storm Water Pollution Control Measures

9.   As soon as possible, but no more than thirty (30) days of the Effective Date of this Consent Decree, Defendant shall obtain Storm Water Permit coverage for all operations taking place at the VCAP Facility, and shall revise its Notice of Intent ("NOI"), Storm Water Pollution Prevention Plan ("SWPPP") that is required by the Industrial General Storm Water Permit ("Storm Water Permit"), and Monitoring &

Reporting Plan ("M&RP") that is required by the Storm Water Permit to incorporate the requirements of the Storm Water Permit and this Consent Decree as set forth herein.

10.  Defendant shall develop and implement BMPs to prevent discharges or to reduce contamination in storm water discharged from the Facility sufficient to achieve the numeric limits detailed in Table 1 below.  All BMPs shall be set forth in the SWPPP. Defendant shall implement the BMPs in order to comply with the provisions of this Consent Decree, and to comply with the requirements of the Storm Water Permit and all applicable provisions of the CWA at the Facility.  If the BMPs do not effectively prevent discharges or reduce contamination in storm water discharged from the Facility in a manner sufficient to achieve the Numeric Limits in Table 1, below, Defendant shall develop and implement additional BMPs pursuant to this Consent Decree.

11.  Defendant shall take the following measures to control the discharge of pollutants from the Facility:

a.  Within fifteen (15) days of the Effective Date, Defendant shall develop and implement a sweeping protocol that includes the use of a regenerative sweeper or a Tennant Model S30 sweeper and ensures that any paved areas and any drainage channel upstream of any discharge point at the Facility are swept during the Wet Season (defined as October 1-May 31) at least twenty-four (24) hours prior to any likely precipitation event forecast of 50% or greater probability and at least once per week in the Wet Season, and once per week during the Dry Season.

b.  Within fifteen (15) days of the Effective Date, Defendant shall install concrete curbs or berms to prevent storm water run-on to each of the properties that make up the Facility.

c.  Within fifteen (15) days of the Effective Date, Defendant shall develop and implement a plan to prevent track-off of pollutants from each of the properties that make up the Facility.

d.  Within fifteen (15) days of the Effective Date, Defendant shall ensure that Defendant does not conduct automobile dismantling or draining of fluids outdoors at the

Facility during precipitation events, and develop and implement a plan to cover areas where automobile dismantling or draining of fluids occurs prior to and during any precipitation events.

e.  Within fifteen (15) days of the Effective Date, all parts or other materials other than doors and window glass removed by Defendant from a car prior to being sold shall be stored under cover where they will not come in contact with precipitation.

f.  Within fifteen (15) days of the Effective Date, Defendant shall develop and implement a plan to clean any bins or containers at the Facility used to store scrap metal or dismantled car parts (e.g., engines, cores, brakes) that ensures the removal of all residue or remnant materials stored in any bin or container each time the container or bin is emptied, or at least four times a year.

g.  Within fifteen (15) days of the Effective Date, Defendants shall develop and implement a plan that ensures all materials stored in bins, containers, or containment structures at the site are stored under cover and not subject to contact with precipitation.

h.  By May 1, 2012, VCAP shall develop and submit to Coastkeeper for review and comment, a plan ("the 936 Pretreatment and Infiltration Plan") for the installation of a pretreatment system and infiltration gallery to capture storm water at the portion of the Facility located at 936 Mission Rock Road ("936 Site")..  The site-specific pretreatment and infiltration system shall be capable of containing and infiltrating the volume of runoff generated by the 95th percentile storm occurring over 24 hours ("Design Standard"), which was calculated based on historical rainfall measured at Ventura County Watershed Protection District's gauge VC 245A (Santa Paula – UWCD) from October 1986 through September 2010.[1]  The system performance monitoring will include flow totalizers at the locations where bypass may occur and a rain gage to document rainfall depths at the site.

---

[1] During this 34-year period there were 563 days with measured rainfall of at least 0.10 inches.  The 95th percentile rainfall depth (i.e. 28 days with more rainfall, 535 days with less rainfall) is 2.46 inches

Coastkeeper shall have twenty-one (21) days to review and comment on the 936 Pretreatment and Infiltration Plan. Defendant shall have fourteen (14) days to accept Coastkeeper's comments and incorporate them into the 936 Pretreatment and Infiltration Plan, or to respond to Coastkeeper's comments in writing, explaining why the comments were not accepted and incorporated. Disputes regarding the adequacy of the 936 Pretreatment and Infiltration Plan shall be subject to Dispute Resolution under Section IV. The 936 Pretreatment and Infiltration Plan shall be completely implemented no later than October 1, 2012. Following complete implementation of the 936 Pretreatment and Infiltration Plan, discharges from the 936 Site occurring as a result of precipitation that exceeds the Design Standard shall not be required to meet the Numeric Limits in Table 1.

      i. VCAP agrees to meet the Numeric Limits for surface discharges at the portion of the Facility located at 1021 Mission Rock Road ("1021 Site"). VCAP agrees to monitor groundwater at the 1021 Site beginning with the 2012-2013 wet season. VCAP agrees to submit a Groundwater Monitoring Work Plan for the 1021 Site ("1021 Groundwater Monitoring Work Plan") by June 1, 2012. The 1021 Groundwater Monitoring Work Plan shall include a well or wells designed and operated to sample groundwater potentially impacted by infiltrating storm water. The 1021 Site Groundwater Monitoring Work Plan shall ensure the installation of well or wells directly adjacent (i.e., beneath or as close as physically possible) to areas of infiltration at the 1021 Site so as to ensure the detection of impacts of storm water percolating to groundwater. The 1021 Site Groundwater Monitoring Work Plan shall also set forth the monitoring well sampling procedures to ensure that samples taken of groundwater, as required by Paragraph 18 of the Consent Decree, are representative of the groundwater influenced by storm water percolating from the areas of the 1021 Site where infiltration occurs. Coastkeeper shall have twenty one (21) days to review and comment on the 1021

in 24-hours. The system shall be designed to ensure it is capable of retaining at least this much

Site Groundwater Monitoring Work Plan.  Defendant shall have fourteen (14) days to accept Coastkeeper's comments and incorporate them into the 1021 Site Groundwater Monitoring Work Plan, or to respond to Coastkeeper's comments in writing, explaining why the comments were not accepted and incorporated.  Disputes regarding the adequacy of 1021 Site Groundwater Monitoring Work Plan shall be subject to Dispute Resolution under Section IV.

      j.   In the event operational areas at the 1021 Site change (e.g., scrap metal processing or storage areas, or automobile dismantling or fluid draining or part storage areas are moved to a different location), VCAP shall submit a Revised 1021 Site Groundwater Monitoring Work Plan that includes necessary modifications to the 1021 Site Groundwater Monitoring Work Plan to account for the changes in the 1021 Site's operational layout.  When a Revised 1021 Site Groundwater Monitoring Work Plan is submitted, VCAP shall submit $5,000 to Coastkeeper to compensate Coastkeeper for its review and comment on the Revised 1021 Site Groundwater Monitoring Work Plan.

      k.  Unless the required Conditional Use Permit is obtained for the portion of the Facility located at 910 Mission Rock Road ("910 Site"), or an infiltration gallery with a groundwater monitoring well is implemented as described below for the 910 Site, VCAP will not conduct any industrial operations on the 910 Site.

      l.   In the event a Conditional Use Permit is obtained for the 910 Site, VCAP shall have until the beginning of the next Wet Season to develop and implement a plan for the pretreatment and infiltration of storm water ("910 Pretreatment and Infiltration Plan"). Within sixty (60) days following the obtainment of a Conditional Use Permit for the 910 Site, the Defendant shall develop and submit the 910 Pretreatment and Infiltration Plan to Coastkeeper for review and comment.  The site-specific pretreatment and infiltration system shall be capable of containing and infiltrating the volume of runoff

precipitation in any 24-hour period.

generated by the 95th percentile storm occurring over 24 hours ("Design Standard"), which was calculated based on historical rainfall measured at Ventura County Watershed Protection District's gauge VC 245A (Santa Paula – UWCD) from October 1986 through September 2010.[2]  The system performance monitoring will include flow totalizers at the locations where bypass may occur and a rain gage to document rainfall depths at the site.  Coastkeeper shall have twenty-one (21) days to review and comment on the 910 Pretreatment and Infiltration Plan.  Defendant shall have fourteen (14) days to accept Coastkeeper's comments and incorporate them into the 910 Pretreatment and Infiltration Plan, or to respond to Coastkeeper's comments in writing, explaining why the comments were not accepted and incorporated.  Disputes regarding the adequacy of the 910 Pretreatment and Infiltration Plan shall be subject to Dispute Resolution under Section IV.  The 910 Pretreatment and Infiltration Plan shall be completely implemented within ninety (90) days of the Parties' agreement on its terms, or by October 1 of the year Defendant begins industrial activity on the 910 Site, whichever is later.  Following complete implementation of the 910 Pretreatment and Infiltration Plan, discharges from the 910 Site occurring as a result of precipitation that exceeds the Design Standard shall not be required to meet the Numeric Limits in Table 1.  Any discharges occurring after industrial activities begin at the 910 Site, but before the installation of the 910 Pretreatment and Infiltration Plan is complete, are subject to the Numeric Limits in Table 1.

        m. As part of the 936 and 910 Pretreatment and Infiltration Plans, Defendant shall develop a work plan for the installation of groundwater monitoring well or wells to evaluate the impact of Facility operations on groundwater ("Groundwater Monitoring Work Plan"). The monitoring well or wells shall be designed and operated to sample

---

[2] During this 34-year period there were 563 days with measured rainfall of at least 0.10 inches.  The 95th percentile rainfall depth (i.e. 28 days with more rainfall, 535 days with less rainfall) is 2.46 inches

groundwater potentially impacted by the infiltrating storm water.  The Groundwater Monitoring Work Plan shall ensure the installation of well or wells directly adjacent (i.e., beneath or as close as physically possible) to any infiltration gallery at the Facility so as to ensure the detection of impacts of storm water percolating to groundwater.  The Groundwater Monitoring Work Plan shall also set forth the monitoring well sampling procedures to ensure that samples taken of groundwater, as required by Paragraph 18 of the Consent Decree, are representative of the groundwater influenced by storm water percolating from the Facility's infiltration gallery(ies) during storm events. Coastkeeper shall have twenty (21) days from receipt of each of the 936 and 910 Pretreatment and Infiltration Plans to provide comments to Defendant on the Groundwater Monitoring Work Plan for each Pretreatment and Infiltration Plan. Defendant shall incorporate, or notify Coastkeeper and provide an explanation in writing that it is not incorporating, Coastkeeper's comments within fourteen (14) days of receipt of Coastkeeper's comments.  Any disputes as to the adequacy of the Groundwater Monitoring Work Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

n.  To ensure there are no unauthorized non-stormwater discharges, non-stormwater discharges from the Facility not authorized by the Storm Water Permit shall be considered a breach of this Consent Decree.

**B.     Reduction of Pollutants in Discharges**

12.   <u>Numeric Limits and Contaminant Reduction</u>.  Contaminants in discharges shall not exceed the limits ("Numeric Limits") in Table 1.[3]  Except as applied to discharges during the 2012-2013 Wet Season, and except as set forth in paragraphs 11(h)

---

in 24-hours.  The system shall be designed to ensure it is capable of retaining at least this much precipitation in any 24-hour period.
[3] Several of the Numeric Limits are hardness dependent.  They are expressed in Table 1 using an assumed hardness range of 75-100 mg/l $CaCO_3$. Defendant shall adjust the limit using the methods provided in Appendix J of the 2008 EPA MSGP (Multi-Sector General Permit).

and 11(l), the presence of any contaminant in any discharge from the Facility in excess of, or outside the range of, the Numeric Limits in Table 1 is a breach of this Consent Decree.

**Table 1**

| **Contaminant** | **Limit** (All but pH expressed as mg/L; hardness dependent limits in bold) |
|---|---|
| Total Suspended Solids | 100 |
| Total Recoverable Copper | **0.0123** |
| Total Recoverable Lead | **0.069** |
| Total Recoverable Zinc | **0.110** |
| Oil and grease | 15 |
| Total Recoverable Aluminum | 0.750 |
| Total Arsenic | **0.1685** |
| Dissolved Cadmium | **0.0043** |
| Total Recoverable Iron | 1.0 |
| Total Recoverable Mercury | 0.0024 |
| Dissolved Nickel | **0.470** |
| Dissolved Silver | **0.0034** |
| Chemical Oxygen Demand | 120 |
| pH | 6.5 to 8.5 units |

13.   Action Plan for Table 1 Exceedances. Defendant shall submit a plan for reducing and/or eliminating the discharge of pollutants ("Action Plan") if any sampling for any contaminant during the Wet Season demonstrates that any contaminant in any discharge from the Facility exceeds the applicable limit for any contaminant found in Table 1.  Discharges from the 936 Site or the 910 Site (once an Infiltration and Pretreatment Plan has been developed and implemented) occurring as a result of precipitation that exceeds the Design Standard shall not implicate the requirement for Defendant to prepare an Action Plan.  In any year that an Action Plan is required, it shall be submitted by July 1 following the Wet Season.

a.   Action Plan Requirements. Each Action Plan submitted shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the Numeric

Limit(s), (2) an assessment of the source of each pollutant exceedance, (3) the identification of additional BMPs, including treating storm water prior to discharge from the Facility, that will be implemented to achieve compliance with the Numeric Limit(s), (4) time schedules for implementation of the proposed BMPs, and (5) if Defendant desires, for the specific property at which the exceedances occurred, a calculation of mass emissions reduction that will be achieved with structural measures that eliminate exposure of industrial activity to precipitation or by retaining and reducing the volume of storm water discharged.  The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than October 1 (prior to the next Wet Season).  Anytime an Action Plan is completed after Coastkeeper's review of the Action Plan as set forth in paragraph 13(b) below, Defendant shall also revise its M&RP and SWPPP as applicable within thirty (30) days.

        b.  <u>Action Plan Review</u>.  Coastkeeper shall have thirty (30) days upon receipt of Defendant's Action Plan to provide Defendant with comments.  Defendant shall have until October 1 (prior to the next Wet Season) to implement any additional non-structural or structural BMPs agreed upon by Defendant and Coastkeeper. Within thirty (30) days from the date Coastkeeper comments on Defendant's Action Plan, Defendant shall provide Coastkeeper with a written explanation if Defendant refuses to develop and/or implement any of Coastkeeper's recommended additional BMPs. Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

        c.  If any structural BMPs require any agency approval, then Defendant shall contact Coastkeeper to request an extension of the deadline, if necessary, to implement the structural BMPs requiring agency approval.  Coastkeeper's consent to Defendant's requested extension shall not be unreasonably withheld.

        d.  Defendant shall notify Coastkeeper in writing when the Action Plan has been implemented.

    14.  <u>Action Plan for Year 3 Wet Season.</u>

a.   If at the end of the 2014/2015 Wet Season, storm water sample results demonstrate that Defendant continues to discharge storm water containing pollutants exceeding the limits set forth in Table 1, Defendant agrees to submit an Action Plan ("Year 3 Action Plan") for reducing and/or eliminating the discharge of pollutants and that includes the elements described in paragraph 13(a).

b.   <u>Review of Year 3 Action Plan</u>.  Coastkeeper shall have thirty (30) days upon receipt of Defendant's Year 3 Action Plan to provide Defendant with comments requesting additional BMPs as Coastkeeper deems necessary.  Defendant shall have until October 1 (prior to the next Wet Season) to implement the Action Plan along with additional BMPs requested by Coastkeeper.

c.   If any structural BMPs require any agency approval, then Defendant shall contact Coastkeeper to request an extension of the deadline, if necessary, to implement the structural BMPs requiring agency approval.  Coastkeeper's consent to Defendant's requested extension shall not be unreasonably withheld.

d.   Defendant shall notify Coastkeeper in writing when the Year 3 Action Plan has been implemented.

15.   If groundwater monitoring at the Facility results in the detection of compounds above the maximum contaminant levels (*see* http://water.epa.gov/drink/contaminants/index.cfm) for arsenic, beryllium, cadmium, cobalt, copper, aluminum, hexavalent chromium, chromium, mercury, nickel, lead, benzene, toluene, ethylbenzene, and xylene, or RWQCB Groundwater Screening levels for TPHg, TPHd and TPH mo  (gas, diesel, and motor oil) see http://www.swrcb.ca.gov/sanfranciscobay/esl.shtml (Attached as Exhibit A), and the same compound is present at the Facility or contained in the Facility's storm water discharges (hereafter defined as a "Detection Event"), then the Defendant must develop and implement a Groundwater Action Plan to control the pollutants in storm water that is infiltrated at the Facility.  At a minimum the Groundwater Action Plan shall include increased source control to prevent pollutant exposure to storm water.  The Groundwater

Action Plan must be submitted within thirty (30) days of Defendant's receipt of sampling data resulting in the Detection Event.

a.  Coastkeeper shall have thirty (30) days upon receipt of Defendant's Groundwater Action Plan to provide Defendant with comments.  Defendant shall have until October 1 (prior to the next Wet Season) to implement any additional non-structural or structural BMPs agreed upon by Defendant and Coastkeeper.  Within fifteen (15) days from the date Coastkeeper comments on Defendant's Groundwater Action Plan, Defendant shall provide Coastkeeper with a written explanation if Defendant refuses to develop and/or implement any of Coastkeeper's recommended additional BMPs. Any disputes as to the adequacy of the Groundwater Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

b.  If any structural BMPs require any agency approval, then Defendant shall contact Coastkeeper to request an extension of the deadline, if necessary, to implement the structural BMPs requiring agency approval.  Coastkeeper's consent to Defendant's requested extension shall not be unreasonably withheld.

c.  Defendant shall notify Coastkeeper in writing when the Groundwater Action Plan has been implemented.

**C.    Sampling and Monitoring at the VCAP Facility**

16.  <u>Sample Analysis and Sample Frequency</u>.  The Defendant shall collect storm water samples from each discharge location at the Facility from at least five (5) storm events per Wet Season.  The Defendant must sample its storm water discharge(s) from the first storm event in each Wet Season.  The Defendant must continue to sample storm water discharges from each storm event that produces a discharge until a total of five (5) storm events have been sampled. For purposes of this Consent Decree, this includes any storm water discharge occurring during the Facility operating hours, or, if storm water is stored onsite prior to discharge, whenever storm water is released outside these hours. Any failure to sample a discharge from each discharge location at the Facility until five (5) storm events per Wet Season have been sampled shall be documented and submitted

1  to Plaintiffs within five (5) days of the date a sample could have been collected but was

2  not. The Defendant shall analyze the samples for the constituents identified in Table 1.

3  Defendant shall use a state certified laboratory to conduct all analysis pursuant to this

4  Consent Decree.  The Defendant shall select laboratories and analytical limits such that,

5  at a minimum, the method detection limits are below the Numeric Limits in Table 1.

6       17.    Revising the M&RP.  Within thirty (30) days of the Effective Date of this

7  Consent Decree, the Defendant shall revise its M&RP for the Facility to incorporate the

8  requirements of this Consent Decree and the Storm Water Permit, including the

9  Groundwater Monitoring requirements in Paragraph 18 of the Consent Decree. The

10 revised M&RP shall require that the samples taken from the Facility's storm water

11 discharges pursuant to the Storm Water Permit are analyzed for the constituents identified

12 in Table 1 in addition to any other constituents required by the Storm Water Permit. The

13 Defendant shall submit the revised M&RP to Coastkeeper for review and comment as

14 soon as it is completed but in any event no later than thirty (30) days of the Effective

15 Date.  Coastkeeper shall provide comments, if any, to the Defendant within thirty (30)

16 days of receipt of the M&RP.  The Defendant shall incorporate Plaintiffs' comments into

17 the M&RP, or shall justify in writing why any comment is not incorporated within thirty

18 (30) days of receiving comments. Any disputes over the adequacy of the revised M&RP

19 shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set

20 out in Section IV below.

21      18.    Groundwater Monitoring. Defendant shall conduct monitoring of stormwater

22 infiltrating to groundwater following installation of any groundwater well for the duration

23 of the Consent Decree in accordance with the Groundwater Monitoring Work Plans for

24 the 910 Site, the 936 Site, and the 1021 Site.  Defendant shall collect samples of

25 infiltrating storm water at each site from at least three (3) storm events per Wet Season.

26 Samples shall be analyzed for at least the contaminants identified in Paragraph 15 above

27 as follows: (a) Defendant shall analyze groundwater samples for the following

28 constituents: cadmium, copper, aluminum, chromium, mercury, nickel, lead, TPHg,

1   TPHd and TPH mo  (gas, diesel, and motor oil); and (b) at least once per Wet Season,

2   Defendant shall analyze samples for arsenic, beryllium, cobalt, hexavalent chromium,

3   benzene, toluene, ethylbenzene, and xylene.

4       19.   <u>Additional Revisions to M&RP</u>.  The Defendant shall revise the M&RP if

5   there are any changes in the Facility's storm water discharge point(s), if Defendant

6   discovers a change in the Facility's storm water discharge point(s), or as applicable to

7   incorporate sampling or monitoring changes in any Action Plan(s). The Defendant shall

8   submit any revised M&RP to Coastkeeper for review and comment within fifteen (15)

9   days of completion.  Coastkeeper shall provide comments, if any, to the Defendant within

10  thirty (30) days of receipt of any revised M&RP. The Defendant shall incorporate

11  Plaintiffs' comments into any revised M&RP, or shall justify in writing why any

12  comment is not incorporated within thirty (30) days of receiving comments. Any disputes

13  as to the adequacy of the M&RP shall be resolved pursuant to the dispute resolution

14  provisions of this Consent Decree, set out in Section IV below.

15      **D.   Storm Water Pollution Prevention Plan**

16      20.   <u>SWPPP Revisions.</u>  Within thirty (30) days of the Effective Date of this

17  Consent Decree, Defendant shall revise the SWPPP to identify (1) current BMPs, (2)

18  BMPs developed pursuant to this Consent Decree and measures taken pursuant to

19  Paragraph 11 (a)-(m) of the Consent Decree to control the discharge of pollutants from

20  the Facility, (3) a description of all industrial activities, (4) corresponding potential

21  pollutant sources for industrial activities, and (5) a description of the potential pollutants

22  from each source. The Defendant shall submit the revised SWPPP to Coastkeeper for

23  review and comment as soon as it is completed, but in any event no later than thirty (30)

24  days of the Effective Date.  Coastkeeper shall provide comments, if any, to the Defendant

25  within thirty (30) days of receipt of the SWPPP. Defendant shall incorporate Plaintiffs'

26  comments into the SWPPP, or shall justify in writing why any comment is not

27  incorporated within thirty (30) days of receiving comments. Any disputes as to the

28  adequacy of the revised SWPPP shall be resolved pursuant to the dispute resolution

1  provisions of this Consent Decree, set out in Section IV below.

2      21.   Additional Revisions to SWPPP. Defendant shall revise the SWPPP as

3  necessary, including but not limited to: (a) each time additional BMPs are developed to

4  achieve compliance with the terms of this Consent Decree and/or the Storm Water

5  Permit; (b) each time Defendant anticipates any changes in the Facility's storm water

6  discharge point(s); and/or (c) each time Defendant discovers a change in the Facility's

7  storm water discharge point(s).  Defendant shall submit a revised SWPPP to Coastkeeper

8  for review and comment as soon as it is completed but in any event no later than thirty

9  (30) days after additional BMPs are developed.  Coastkeeper shall provide comments, if

10  any, to the Defendant within thirty (30) days of receipt of any revised SWPPP. The

11  Defendant shall incorporate Plaintiffs' comments into any revised SWPPP, or shall

12  justify in writing why any comment is not incorporated within thirty (30) days of

13  receiving comments. Any disputes as to the adequacy of any revised SWPPP shall be

14  resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in

15  Section IV below.

16      **E.   Employee Training**

17      22.   Within thirty (30) days of the Effective Date, Defendant shall develop a

18  training program, including any training materials needed for effective implementation of

19  the training program ("Training Program").

20      23.   The Training Program shall ensure (a) that there are a sufficient number of

21  employees delegated to achieve compliance with the Storm Water Permit and this

22  Consent Decree, and (b) that these employees are properly trained to perform the required

23  compliance activities. Such Training Program shall be specified in the SWPPP.

24      24.   The Training Program shall require specific training to include at least the

25  following:

26          a.   Non-Storm Water Discharge Training.  The Defendant shall train all

27  employees on the Storm Water Permit's prohibition of non-storm water discharges so that

28  employees know what non-storm water discharges are, how to detect them, and how to

1   prevent them;

2         b.   <u>BMP Training</u>. The Defendant shall train all employees responsible for

3   BMP implementation and maintenance to ensure that BMPs are used effectively to

4   prevent the exposure, discharge, and/or treatment of storm water at the Facility, and in

5   accordance with the manufacturer's instructions;

6         c.   <u>Sampling Training</u>. The Defendant shall train all individuals collecting

7   samples at the Facility pursuant to this Consent Decree or the Storm Water Permit on the

8   proper sampling protocols, including chain of custody requirements, to ensure storm

9   water and/or non-storm water samples are properly collected, stored, and submitted to a

10  certified laboratory;

11        d.   <u>Visual Observation Training.</u> The Defendant shall provide training to all

12  individuals performing visual observations at the Facility pursuant to this Consent Decree

13  and the Storm Water Permit.

14      25.   Training shall be provided by a private consultant or a representative of

15  Defendant familiar with the requirements of this Consent Decree and the Storm Water

16  Permit, and shall be repeated as necessary to ensure that all such employees are familiar

17  with the requirements of this Consent Decree, the Storm Water Permit, and the Facility's

18  SWPPP.  All new staff shall receive this training before assuming responsibilities for

19  implementing the SWPPP or M&RP.

20      26.   The Defendant shall maintain training records to document compliance with

21  this paragraph, and shall provide Coastkeeper with a copy of these records within

22  fourteen (14) days of receipt of a written request.

23     **F.**   **Compliance Monitoring and Reporting**

24      27.   <u>Annual Site Inspections.</u> Coastkeeper, and if Coastkeeper desires up to two

25  additional representatives or consultants (including an attorney), may conduct two

26  inspections ("Site Inspection(s)") at the Facility each year that this Consent Decree is in

27  effect.  Site Inspections shall occur during normal business hours and Coastkeeper shall

28  provide Defendant with as much notice as possible, but at least thirty-six (36) hours

notice prior to a Site Inspection during wet weather, and forty-eight (48) hours notice prior to a Site Inspection during dry weather. Notice will be provided by telephone and electronic mail.  During the Site Inspection, Defendant shall allow Coastkeeper and/or its representatives access to the Facility's SWPPP, M&RP, monitoring records, and to all monitoring reports and data for the Facility.  During the Site Inspection, Defendant shall allow Coastkeeper and/or its representatives to collect samples of storm water or non-stormwater discharges at the Facility, samples from any infiltration galleries at the facility, and groundwater samples from any ground water well at the Facility. Coastkeeper shall be permitted to take photographs or video recording during any Site Inspection pursuant to this paragraph and/or paragraph 28.  If Coastkeeper takes photographs and/or video recording, Coastkeeper shall provide Defendant with the photographs and/or video within fourteen (14) days after any written request by Defendant for such photographs and/or videos.  Coastkeeper agrees that all individuals who will participate in a site inspection pursuant to this paragraph and/or paragraph 28 will execute a waiver and release prior to the site inspection, which is attached as Exhibit B.  Coastkeeper also agrees that all individuals who will participate in the inspection will sign a sign-in sheet when they arrive at the Facility.

28.     Inspections of the 910 Site:  Until the Conditional Use Permit for the 910 Property is obtained, Coastkeeper may conduct four (4) visual inspections of the 910 Site ("910 Site Inspection(s)").  Any inspection of the 910 Site, unless combined with an inspection of the entire Facility as described in paragraph 27 above, shall be conducted by no more than two (2) Coastkeeper representatives (including counsel if Coastkeeper desires).  Notice of a 910 Site Inspection shall be provided no less than thirty-six (36) hours prior to the proposed start time of the inspection.

29.     Coastkeeper's Compliance Monitoring. Defendant agrees to compensate Coastkeeper for time to be spent by legal staff or technical consultants monitoring the Defendant's compliance with the Consent Decree.  To this end, the Defendant shall pay Coastkeeper the sum of Fifteen Thousand Dollars ($15,000) within thirty (30) days of the

Effective Date.  Anytime Defendants are required to submit an Action Plan pursuant to paragraph 13 or 14 of this Consent Decree to Coastkeeper, Defendant shall make a compliance monitoring payment in the amount of Six Thousand Dollars ($6,000) upon submission of the Action Plan.  All payments required under this paragraph shall be submitted and made payable to "Ventura Coastkeeper," addressed to Ventura Coastkeeper, 3875-A Telegraph Road #423, Ventura, California 93003, and sent via courier or overnight delivery.

30.  <u>Data Reporting</u>.  During the life of this Consent Decree, the Defendant shall provide Coastkeeper with a copy of all compliance and monitoring data, including inspection reports, related to the Facility's coverage under the Storm Water Permit on a monthly basis. The Defendant shall provide Coastkeeper with all laboratory analyses related to sampling at the Facility within ten (10) days of the Defendant's receipt of such information.

31.  <u>Document Provision</u>. During the life of this Consent Decree, the Defendant shall copy Coastkeeper on all documents and communications related to water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any State, local agency, county, or municipality.  Such reports and documents shall be provided to Coastkeeper concurrently as they are sent to the agencies and/or municipalities. Any correspondence related to water quality received by the Defendant from any regulatory agency, State or local agency, county, or municipality shall be provided within three (3) business days of receipt by the Defendant.

**G.   Environmental Project, Reimbursement of Litigation Fees and Costs, and Stipulated Penalties**

32.  <u>Environmental Project</u>. The Defendant agrees to make a payment of Thirty Thousand Dollars ($30,000) within thirty (30) days of the Effective Date to the Rose Foundation for Communities and the Environment for a project related to water quality designed to analyze, reduce, prevent, or otherwise mitigate the ecological effects of storm water and/or non-stormwater discharges into the Santa Clara River and its Estuary.  The

payment shall be mailed via certified mail or overnight delivery to the attention of Tim Little at 6008 College Avenue Suite 10, Oakland, California 94618-1382.  Defendant shall provide Coastkeeper with a copy of such payment.

33.   <u>Reimbursement of Plaintiffs' Fees and Costs</u>. The Defendant agrees to partially reimburse Plaintiffs for their investigation fees and costs, consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter in an amount totaling Seventy Five Thousand Dollars ($75,000).  All such payments shall be made within thirty (30) days of the Effective Date and shall be made payable to

"Lawyers for Clean Water Attorney-Client Trust Account"

and delivered by certified mail or overnight delivery to

Lawyers for Clean Water, Inc.
1004-A O'Reilly Avenue
San Francisco, California 94129

34.   <u>Stipulated Payment</u>. The Defendant shall make a remediation payment of Six Hundred Dollars ($600) for each missed deadline included in this Consent Decree. Payments for a missed deadline shall be made for the restoration and/or improvement of the watershed in the area affected by the Defendant's discharges and shall be awarded to the Rose Foundation for Communities and the Environment, and mailed via certified mail or overnight delivery to 6008 College Avenue Suite 10, Oakland, California 94618-1382. The Defendant agrees to make the stipulated payment within thirty (30) days of a missed deadline and make the payment via overnight delivery or by certified mail. The Defendant shall provide Coastkeeper with a copy of each such payment at the time it is made.

35.   <u>Interest Payments</u>. In the event of late payment of any of the sums due under this Consent Decree, the Defendant shall pay 3% interest to Coastkeeper, which shall accrue daily from the first day past the date the sum was due until the date the Defendant tenders payment. All such payments shall be made payable to

"Lawyers for Clean Water Attorney-Client Trust Account"

and delivered by certified mail or overnight delivery to

> Lawyers for Clean Water, Inc.
> 1004-A O'Reilly Avenue
> San Francisco, California 94129

### H.    Agency Review of Consent Decree

36.    Plaintiffs shall submit this Consent Decree to the Federal Agencies, within three (3) days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Defendant.  In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies.

## IV.   DISPUTE RESOLUTION

37.    This Court shall retain jurisdiction over this matter for the purposes of adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree.  The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

38.    <u>Meet and Confer</u>.  A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Parties in writing of the matter(s) in dispute and of the party's proposal to resolve the dispute under this Section. The Parties shall then meet and confer in an attempt to resolve the dispute no later than fourteen (14) calendar days from the date of the notice.

39.    If the Parties cannot resolve a dispute by the end of the meet and confer process, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California.  The Parties shall jointly apply to the Court for an expedited hearing schedule on the motion.

40.    If Coastkeeper initiates a motion or proceeding before the Court to enforce the terms and conditions of this Consent Decree, Coastkeeper shall be entitled to recover

reasonable fees and costs incurred to enforce the terms of this Consent Decree consistent with the provisions of Sections 505 and 309 of the CWA, 33 U.S.C. §§ 1365, 1319.

## V.   MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

41.   In consideration of the above, upon the Effective Date of this Consent Decree, the Parties hereby fully release, except for claims for the Defendant's failure to comply with this Consent Decree and as expressly provided below, each other and their respective successors, assigns, officers, agents, employees, and all persons, firms and corporations having an interest in them, from any and all alleged CWA violations claimed in the Complaint and First Amended Complaint, up to and including the Effective Date of this Consent Decree.

42.   Nothing in this Consent Decree limits or otherwise affects Plaintiffs' right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the Regional Board, EPA, or any other judicial or administrative body on any other matter relating to Defendant.

43.   Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. The Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

44.   <u>Force Majeure</u>. The Defendant shall notify Coastkeeper pursuant to the terms of this paragraph, when timely implementation of the requirements set forth in this Consent Decree becomes impossible, despite the timely good-faith efforts of the Defendant, due to circumstances beyond the reasonable control of the Defendant or its agents, and which could not have been reasonably foreseen and prevented by the exercise of due diligence by the Defendant.  In no circumstances shall a claim of inability to pay be considered Force Majeure.

a.   If the Defendant claims impossibility, they shall notify Coastkeeper in writing within twenty-one (21) days of the date that the Defendant first knew of the event

or circumstance that caused or would cause a violation of this Consent Decree.  The notice shall describe the reason for the nonperformance and specifically refer to this Section.  It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by the Defendant to prevent or minimize the delay, the schedule by which the measures will be implemented, and the anticipated date of compliance. The Defendant shall adopt all reasonable measures to avoid and minimize such delays.

b.  The Parties shall meet and confer in good-faith concerning the non-performance and, where the Parties concur that performance was or is impossible, despite the timely good faith efforts of the Defendant, due to circumstances beyond the control of the Defendant that could not have been reasonably foreseen and prevented by the exercise of due diligence by the Defendant, new deadlines shall be established.

c.  If Coastkeeper disagrees with the Defendant's notice, or in the event that the Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the Dispute Resolution Procedure pursuant to Section IV.  In such proceeding, the Defendant shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by force majeure and the extent of any delay attributable to such circumstances.

## VI.   MISCELLANEOUS PROVISIONS

45.   <u>Construction</u>.  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

46.   <u>Choice of Law</u>.  The laws of the United States shall govern this Consent Decree.

47.   <u>Severability</u>.  In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

48.   <u>Correspondence</u>.  All notices required herein or any other correspondence

pertaining to this Consent Decree shall be sent by regular mail or electronic mail as follows:

 If to Plaintiffs:

 Drevet Hunt
 Lawyers for Clean Water, Inc.
 1004 A O'Reilly Ave
 San Francisco, CA 94129
 drev@lawyersforcleanwater.com

 With copies to:

 Jason Weiner
 Staff Attorney
 Wishtoyo Foundation / Ventura Coastkeeper
 3875-A Telegraph Road #423
 Ventura, CA 93003
 jweiner.venturacoastkeeper@wishtoyo.org

 If to Defendant:

 William W. Funderburk, Jr.
 Anna L. Le May
 Castellón & Funderburk LLP
 811 Wilshire Boulevard, Suite 1025
 Los Angeles, CA  90017
 wfunderburk@candffirm.com
 alemay@candffirm.com

 With copies to:

 Robert Nazaryan
 Ventura County Auto Parts
 842 Mission Rock Road
 Santa Paula, CA  93060
 Robert@pickthepart.com

 Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or

addresses shall be communicated in the manner described above for giving notices.

49.     <u>Effect of Consent Decree</u>.  Plaintiffs do not, by its consent to this Consent Decree, warrant or aver in any manner that the Defendant's compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of the Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

50.     <u>Counterparts</u>.  This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

51.     <u>Modification of the Consent Decree</u>.  This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

52.     <u>Full Settlement</u>.  This Consent Decree constitutes a full and final settlement of this matter.

53.     <u>Integration Clause</u>.  This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

54.     <u>Authority</u>.  The undersigned representatives for Plaintiffs and Defendant each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

55.     The provisions of this Consent Decree apply to and bind the Parties, including any successors or assigns.  The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

56.     The Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.  By entering into this Consent Decree, the Defendant does not admit liability for any purpose as to any allegation or matter arising out of this Action.

The undersigned representatives for Coastkeeper and Defendant each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree and that this Consent Decree binds that party.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth above.

**IT IS SO ORDERED:**

Date:June 15, 2012_____

_____

DISTRICT COURT JUDGE
CENTRAL DISTRICT OF CALIFORNIA

APPROVED AS TO CONTENT

VENTURA COASTKEEPER AND
WISHTOYO FOUNDATION

Dated:        April ___, 2012

_____
Mati Waiya, Executive Director
Ventura Coastkeeper and
Wishtoyo Foundation

VENTURA COUNTY AUTO PARTS,
INC.

Dated:        April ___, 2012

_____
Razmik Nazaryan
Owner

APPROVED AS TO FORM

Castellón and Funderburk LLP

Dated:        April ___, 2012        _____
                                     William W. Funderburk, Jr.
                                     Attorney for Defendant

                                     LAWYERS FOR CLEAN WATER, INC.

Dated:        April ___, 2012        _____
                                     Layne Friedrich
                                     Drevet Hunt
                                     Lawyers for Clean Water, Inc.
                                     Attorney for Plaintiffs

                                     WISHTOYO FOUNDATION AND
                                     VENTURA COASTKEEPER

Dated:        April ___, 2012        _____
                                     Jason Weiner
                                     Staff Attorney for Plaintiffs